May it please the Court, James Fife of Federal Defenders, on behalf of the Appellant, Mr. Perry, I'd like to reserve one minute for rebuttal, if possible. In Carty, this Court, en banc, held that no statutory sentencing factor in 3553A can be given greater inherent weight than any other. Here, however, the District Court apparently did just that by treating one portion of one sentencing goal as outweighing all the other goals. Contrary to the undisputed facts of the case showing that the ability to meet all the other sentencing goals relied crucially on the success of one goal, drug treatment. The District Court violated Carty, Gall, and Rita by violating parsimony principle, by abusing its discretion multiple times, and by miscalculating the guidelines. Let me start with the general unreasonableness argument. The District Court abused its discretion in multiple ways. This itself is unreasonable, results in an unreasonable sentence under Rita, Gall, and Carty. The Court failed to give due weight to undisputed facts regarding the treatment. The record is just rife with references that the District Court recognized that every one of the sentencing goals in 3553A2 was critically linked to the success in drug treatment on Mr. Perry's case, every one of them. Seriousness of the offense, respect for the law. Sotomayor, when is Mr. Perry's 37-month sentence over? His BOP estimates he'll be up on November 1st of this year. At the time he was resentenced, if he was given the 18-month sentence the defense was recommending, he'd already served his time. If he took the 24 months the government was recommending, he had about five weeks left to go. Because of the elevated sentence the District Court imposed, he's got essentially over a year of additional custody. Over a year, during which time it is conceded, he will receive no drug treatment whatsoever. Because he no longer qualifies to participate in the BOP's RDAP program. Even though the Court recognized every one of the sentencing goals, and I can give the citations to the record, but during the first sentencing hearing in this case the judge went through each one of the sentencing goals, and at every time he mentioned how that goal was critical for the success on that goal was critically tied to the success of drug treatment. The only one that wasn't tied to drug treatment was pure punishment. So the Court recognized multiple times that drug abuse was central to everything to achieve the statutory sentencing goals. The defense offered different alternatives for the judge, different alternative sentences. Originally the defense recommended a split sentence, 18 months, 12 months custody, 6 months of residential drug treatment. At the resentencing, I offered the judge a declaration showing three or four different probation-approved intensive drug treatment programs in Indiana, which was important because the judge also recognized that part of the goal in helping Mr. Perry resolve his family. Mr. Perry's mother lives in Indiana, so I provided some probation-approved treatment programs in the northern and southern district of Indiana. The Court didn't take up any of this. Who isn't at his prerogative? I mean, you know, another judge might have been sympathetic to it, but Judge Thompson, who was there on the scene, he analyzed the man in front of him, and in his view, this is what he was doing. This is what his background and problem warranted. Well, that may be true in general, but I think because we made a specific objection that the sentence was greater than necessary, that it violated the parsimony principle. And he overruled it. I mean, it was his judgment that it wasn't more than necessary. I mean, you and he can disagree about it, but he's the judge. You know, he gets the last vote. That's true. He imposes the sentence in the end. But under Cardi, he's required to state why he thinks his sentence. And he did. He did. And the problem isn't that he didn't state a reason, but the reason doesn't, does not make sense. What about the minor role enhancement? Are you going to talk about that, the minor role enhancement issue? Yes, Your Honor. The judge rejected the minor role adjustment here on the basis of a completely novel legal theory that if you evade apprehension, you are now in a managerial or supervisory role, that you, as he said, you are now taking or are now a willing participant. He's now taking part in this offense. But that's wrong for at least three reasons. One is that there's no law whatsoever supporting this. And the other is that there's no law that supports this. And the only thing that disqualifies the minor role, the kind of supervisory or leadership role that disqualifies a simple courier, which Mr. Perry quite clearly was simply a simple courier, the only thing that disqualifies the case law is shown that there's some facts that show that you're deep into this, like you have smuggled a lot of aliens, or you've done it multiple times, or you have some sort of car in which two human beings were locked in the trunk. Is that what happened? That's right, Your Honor. And that's what the government has argued, that simply because he was the only driver, he was the only person carrying the load, that therefore... I mean, it's a load in the sense that it's, I mean, these are people. That's correct, Your Honor. And the fact that the case abandons the vehicle, what's minor about that exactly? Your Honor, what's important for the role adjustment is to show how much responsibility, culpability the defendant has in far as supervisory or managerial status. Is that the question, or is the question whether the district court applied an untenable theory? I mean, even if there might be a tenable theory, he didn't apply it. For minor role? I don't believe so, Your Honor, because I think that the facts show that this is very much like the ordinary courier situation. What I'm saying is, Judge Thompson didn't say that. He didn't say what the government is saying. He didn't say what Judge Silverman is saying. He said, this guy may have been a minor participant until he, he seemed to assume he was, until he decided to go through the checkpoint and escape. That's right. It may be a futile gesture, but why don't we reverse and remand on that anyway, even if the other theory is a viable theory? Because, Your Honor, I don't think that there's any case law that supports that this is what's something that would convert a minor. I'm agreeing with you. You're not listening very hard. What I'm trying to find out is, if we thought that theory is no good, but Judge Silverman's theory would be okay, but it wasn't the one that was articulated, what would we do? Well, Your Honor, I, I think that we'd have to see that there actually were facts that supported that. I mean, that was something that the district judge who was looking at this and had the facts in front of him, it was not, didn't see as the crucial. I don't understand. You know, here, normally, someone who is just a minor participant or just a courier, I would think, would be less culpable than the people who organize it, pay him, send him off, tell him where to go. And had he, had he pulled over and had the truck, had the aliens discovered and complied with what he, done what he was supposed to do, that would be, he would be a courier. But once, what the issue to me is once he stops doing just what other people have told him to do, which is what a courier is, and takes responsibility for getting those people across and starts and tries to, to, and does not do exactly, necessarily what they told him to do, but acts on his own, if the district court says this means that you're no longer entitled to be treated as just a courier and less culpable, it seems to me that would be absolutely okay, wouldn't it? Well, Your Honor, I guess, maybe I misunderstood, but I think that the answer to that is, is that the facts here are only susceptible to one reasonable interpretation, I think, and even Judge Thompson recognized that, that by fleeing the checkpoint, he was not, as the judge said initially, attempting to make the scheme work. He was not trying to deliver his, the aliens. At this point, he was fleeing to escape from custody, and all the facts seem to be pretty clear that there's no way that he could have conceived of that he was going to complete his mission at this point in a small, overloaded car with three flattened tires. All he did was try to get a, enough head start on the border patrol, and then he did. He jumped out of the car, left his, left the aliens locked in the trunk, and fled into the bushes. The evidence here shows nothing that he was trying to attempt to, I'm going to try to complete this, despite the fact that I'm almost caught. Why is that required? Well, that shows that he's not trying to further the scheme. He is not acting any longer for the conspiracy or for the, for the purpose of delivering the aliens. He's acting solely for the purpose of escaping himself. That's not furthering the goal of the alien smuggling. He's simply trying to escape. And it's just because of the facts that we're talking about a car. If this were a car loaded with drugs, and he's in the car, and his only means of escape is to drive off, whether it's aliens or drugs that are in the car, it's not necessarily that he is, that you can believe that he's trying to deliver the drugs now. He's simply trying to get a head start so that he can escape. And he's not, as Judge Thompson said, trying to complete, taking an independent role in trying to complete his mission. It's pretty clear that he had abandoned the mission as soon as he realized he'd been caught at the checkpoint. And all he was trying to do was get away. That's still a minor role. That doesn't add anything more to him. To go back to my question, if we agreed with you on that, would there be any point in remanding? For two reasons. I mean, one is this issue about whether there's an alternative way to come to the same conclusion about the guidelines. Second of all, we have a judge here who's already told all of you four different times that he doesn't think the guidelines are even useful in this case, are very useful. So, which he's entitled to think, except you have other arguments. But he's entitled to think that. I mean, at what point does the Cardi Zavala, Rita, et cetera, requirement that you calculate the guidelines properly just become pointless when you have a judge who has already told you that he's not going to follow the guidelines in this case because he thinks there are other considerations? Why would we send it back to him and say, well, do the minor participant thing right, even though he said he doesn't care what the answer is? Well, Your Honor, I think that, I mean, because I also raised the argument that there's a general problem with the reasonableness and the parsimony in this case. I understand that. But what about this point? Well, I pointed to the DeMott case. Briefly, because you've won the district court. Sorry, Your Honor. Yes, because of the DeMott case, which I cited, where there was like the court was facing a third resentencing in that case. Here it would be a fifth resentencing. I think what's necessary is for a new judge who doesn't have such a long history and a history of intransigence to maybe look at it fresh and to give a new view on it. And I think that's appropriate, given the fact that. How long has he served already? He's almost up to his, as I said, it's at least. Thirty months or so. Thirty months, yes. Okay. Because he's got just about six months left on that. Okay. Thank you.  Thank you. May it please the Court? Bruce Smith on behalf of the United States. I'd ask an opportunity just to answer Your Honor's questions, if you have any. Well, we had a lot of them. We just asked them, so maybe you can answer some of them. Well, as to the minor role, Your Honor seems interested in that. The point that alludes my colleague is that there's not a presumption out there that a person driving a vehicle is guilty of a crime. And that the person driving a vehicle with aliens in the back is always a minor participant. But that's not the question. The question is that Judge Thompson applied a certain theory. He applied and so then there are two questions as to that. A, is his theory okay? He was very emphatic about it. And B, if it's not okay, what do we do next? I respond just by saying that that's one thing that the judge said. But we still have to remember that it's the defendant's burden to produce evidence as to his role. He failed to speak to the Border Patrol agents, which is his right. He failed to speak to the probation officer. He failed to offer testimony at the district court. But there was evidence, wasn't there, that these guys made arrangements with somebody else in Mexico? Yes, sir. Yes, sir, but that's because they were smuggled in from Mexico. Mr. Perry is charged with transporting aliens, not with smuggling aliens. So his job was to transport them from place A to place B. One of the aliens testified, and it's in the PSR that he or didn't testify, but he identified, the alien identified Mr. Perry as the driver of the car. So Mr. Perry was obviously there before they were locked in the trunk. But Mr. Perry wants us all just to ---- But Judge Thompson obviously didn't think that because he seemed to think that if he had stopped at the border and not run away, he would have been entitled to that. I mean, that's certainly the implication of what he said. In all due respect, that implication is there, Your Honor. But I don't ---- Again, Mr. Perry offered us nothing. So Mr. Perry gave Judge Thompson nothing to discuss. Judge Thompson offered that. You're saying that Judge Thompson would have been wrong had he so found. But what we have is what he did find, and you're not willing to answer the question of whether, given what he did find, A, was he right, and, B, if he was wrong, why don't we reverse remand and ask him to do it again and yet again? And I don't mean not to answer your question. I would just submit on the issue. I don't know that I fully understand the reasoning relative to whether or not a person runs the checkpoint. But I was there for all four of those hearings. And as the record points out, Mr. Perry never offered any evidence. He never carried his burden to show that he was a minor ruler. But when you're reviewing a judge for abuse of discretion under Booker, don't you have to review what he did, not what he could have done? You review the record, Your Honor. And there's nothing in ---- No, you don't review the record. You review the ---- at least in part, you review the reasoning under Rita and Casali and so on. Your Honor has the PSR and the other materials presented at the evidentiary hearing, and there's just nothing that supports the conclusion that he was a minor ruler. All right. So you're just ---- so your view is it doesn't matter what the district court said, that in the post-Booker world, we just look at the record of what he could have done, not what he did do. That's just wrong. I'm saying that, all due respect, Your Honor, I'm simply saying that we look at the record before the district court. We ask ourselves, what demonstrates that this person has a mitigated or an aggravated role, as opposed to just a guard variety role? And there's nothing there. He didn't put the aliens in there. And he's driving the ---- where did this stop? Where did the ---- when was he first identified and told the story? At the Pine Valley checkpoint there on the highway. At the checkpoint. Yes. When he pulled over the sign. And so, anyway, I guess we'll just go back and forth on this. But, again, my thought that I'd ask to leave you with is that there should not be a presumption that ---- No, no, no. I'll give you that. But if it was at his ---- if the facts up until the time that he starts to escape and pull away show that he's transporting and that he didn't put them in there and that he got money to do it and was told to do it by somebody else, does that make him  No, ma'am. What more would have to be done? Not in a transportation case. Perhaps if he pled guilty in an alien smuggling case. If Judge Thompson, if the running thing had never happened and if Judge Thompson had found that he was entitled to the minor participant exception or departure, which he would have, we're pretty sure he would have, would you have reversed ---- would he be reversible at that point? He should have been. That wasn't our plea agreement. It certainly wasn't supported in the government's argument to the court. What was in the plea? Help me with the facts. What was the sentence? What was referred to in the plea agreement? The plea agreement would have been 18 because of 12. Sorry. The 12-base fence level would go to 18 because of the dangerousness. We get to take three off for acceptance of responsibility, two off for fast track, brings us to a 13. He's in criminal history category 4. We were 24 to 34 ---- I'm sorry, 24 to 30 months. Government argued for 24 months, all four times. But did the government have a ---- did you have a minor participant in ---- No, ma'am. No, you didn't. Probation officer did, but we did not. You did not. And the plea agreement did not. That's right. Because presumably you didn't think the facts ---- No, ma'am. I'm an alien transportation case. Alien smuggling, as His Honor mentioned, that's a different story. Let me ask you about the drug issue. What Judge Thompson ended up saying here at the end, as I read it, or you can tell me whether you agree, was something to the effect of because of his drug addiction, aside from trying to get him drug rehabilitation, we need to put him in prison longer than otherwise because it's the only way he's going to finally wake up and take care of his drug addiction. That's what he said at the very end. Is that a fair reading? And, you know, one of the ---- another thing that corroborates the wisdom of Judge Thompson is that we waited on that third sentencing hearing. We waited week after week after week. Why? We waited for Mr. Perry to finish the BOP drug program. We waited and put the sentencing over and over so he could come back. And he didn't finish. I understand. He dropped out. And so that's when Judge Thompson said, Mr. Perry, you've, in a thousand words or less, Mr. Perry, you've been before court after court. Okay, but I'm asking you conceptually, and you're having a hard time answering conceptually, but I'm asking you conceptually, is that a valid 3553A factor, i.e., put someone who has a drug addiction in prison longer than you might put somebody else in prison for that reason and not in order to get him drug treatment? And that's what he was doing. On his face, you're absolutely right, no. However, we have a person here who's been in program after program, who's been before court after court, who's failed to appear, who's violated probation. And Judge Thompson said, Mr. Perry, I have to give you the kind of motivation so that you will no longer offend. I think 37 months will do it. He didn't just take a drug addict. But that's my question. If he said so you'll no longer offend, sure. But if he said so you'll finally wake up and get over your drug addiction, which is sort of what he said. But this we can't characterize him, Mr. Perry, as a person who is simply a drug addict who's before the court and the judge saying, I'll teach you to use drugs. We'll give you a long sentence. No, I understand that. He's saying, you've been before many courts. You've been involved in programs. You don't have an incentive to stop your drug program and to stop offending. I'm going to give you incentive. Here's 37 months. Think about that next time. That's how he dealt with it. All right? Thank you very much. Thank you, counsel. Appreciate your argument. The matter just argued is submitted for decision.
judges: Schroeder, Silverman, Berzon